

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 30, 2008

**BY HAND**

The Honorable Robert P. Patterson
United States District Judge
United States District Court
500 Pearl Street, Room 2550
New York, New York 10007

    Re:    United States v. Kyrone Doughty,
               08 Cr. 375 (RPP)

Dear Judge Patterson:

       In advance of the evidentiary hearing scheduled on July 18, 2008 at 10:00 a.m., the Government respectfully submits this letter in response to defendant Kyrone Doughty's motion to suppress evidence obtained in connection with his April 3, 2008 arrest for being a felon in possession of a weapon. Doughty does <u>not</u> dispute that he possessed a weapon on April 3, or that he made inculpatory statements relating to his possession of that weapon. Instead, Doughty argues that he was not doing anything to arouse the reasonable suspicion of police officers who approached him on April 3. The Government respectfully submits that the evidence at the hearing will show that the police had reasonable suspicion that criminal activity was afoot when they stopped Doughty (and two other individuals with him), that the police asked Doughty to raise his hands, that Doughty only raised one hand, using the other hand to cover part of his waist where the police learned subsequently that Doughty kept a gun, that Doughty struggled with the police who tried to stop him, and that Doughty was in possession of a weapon.

### APPLICABLE LEGAL PRINCIPLES

       The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. In the context of this case, the applicable law concerns the ability of the Officers to stop the defendant and conduct a search of his person.

    A.    <u>The Initial Stop</u>

       It is well-settled that "[u]nder <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is

Honorable Robert P. Patterson
June 30, 2008
Page 2

afoot." United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007); see also United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995); United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). To justify a Terry stop, "[p]olice 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest].'" Elmore, 482 F.3d at 178-79 (alterations in original) (quoting Terry, 392 U.S. at 21).

"Reasonable suspicion" is measured by an objective test; "the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir. 2005) (quoting Whren v. United States, 517 U.S. 806, 813 (1996)). When assessing whether an officer's suspicion "that criminal activity is afoot," Elmore, 482 F.3d at 178, was objectively reasonable, a court must consider the "totality of the circumstances" facing the officer at the time of the stop, id. at 179; see United States v. Cortez, 449 U.S. 411, 417 (1981); see also United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000). In that analysis, factors that by themselves suggest innocent conduct may add up to reasonable suspicion when viewed as a whole. See United States v. Arvizu, 534 U.S. 266, 274-75 (2002); see also United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.").

Moreover, reasonable suspicion is measured from the objective perspective of a trained and experienced law enforcement officer. That is because the reasonable suspicion analysis "does not deal with hard certainties, but with probabilities," and properly takes into account that trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person. Cortez, 449 U.S. at 412; United States v. McCargo, 464 F.3d 192, 197 (2d Cir. 2006); Villegas, 928 F.2d at 517 (suspicion reasonable if conduct appears suspect to trained observer); see also Ornelas v. United States, 517 U.S. 690, 699-700 (1996) (while ultimate review of reasonable suspicion determination is de novo, deference should be given to experience of police officers involved).

The threshold for reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274; Elmore, 482 F.3d at 179 (same). Specifically, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). It may be based on any of a variety of factors, including an individual's presence in a high-crime neighborhood, "nervous, evasive behavior," and "unprovoked flight upon noticing the police." Illinois v. Wardlow, 528 U.S. 119, 124 (2000); United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006) ("When the noticed presence of officers provokes a suspect's headlong flight in a high crime area, the officers are justified in suspecting criminal activity on the part of the suspect and a Terry stop is warranted."); United

Honorable Robert P. Patterson
June 30, 2008
Page 3

States v. Welbeck, 145 F.3d 493, 498 (2d Cir. 1998) (stop justified by, *inter alia*, defendant's "evident alarm and evasive behavior" after being alerted to police presence); United States v. Padilla, No. 06 Cr. 824, 2007 WL 1958894, at *7 (E.D.N.Y. June 29, 2007) (finding reasonable suspicion where encounter occurred in high-crime area; defendant was walking with two other individuals in a suspicious manner at night in a poorly light area; and officer testified that "defendant's hand gesture toward his waistband was a familiar one that he had seen numerous times in his experience as a police officer—that of someone adjusting a gun tucked into his pants"). In short, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Wardlow, 528 U.S. at 125.

    B.    Protective Search

        After stopping a suspect, an officer is permitted to conduct a patdown or protective search for weapons if he has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27; Ybarra v. Illinois, 444 U.S. 85, 93 (1979) ("a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons"); Muhammad, 463 F.3d at 124 ("A patdown is reasonable to 'allow the officer to pursue his investigation without fear of violence.'") (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)). The officer need not be certain that the suspect is armed; rather, an officer may conduct a protective search if a reasonably prudent person in the officer's position "would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27; United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists."); see also McCargo, 464 F.3d at 200 ("[T]he strictures of the Fourth Amendment must not be so burdensome as to impose unreasonable and avoidable risks on police officers during their investigations.").

        A law enforcement officer reasonably can base his determination that a protective search for weapons is necessary based on the totality of circumstances related to the stop, including the location at which the suspect is found; the time of day at which the stop takes place; and the suspect's conduct in connection with the stop. For example, the Second Circuit has held that a protective search for weapons in connection with a Terry stop is justified when the stop takes place in a high crime area, and in circumstances that raise the risk to officers associated with the stop. See Holeman, 425 F.3d at 192 ("In the middle of the night, the police were in a high crime area with a convicted narcotics felon who was acting suspiciously. These facts alone suffice to support reasonableness."); United States v. Paulino, 850 F.2d 93, 98 (2d Cir. 1988) (holding that "furtive movement provided a legal basis for the protective search"); United States v. Garcia, 279 F. Supp. 2d 294, 300 (S.D.N.Y. 2003) (during traffic stop, officer was justified in patting down defendant to determine whether he was carrying a weapon after

Honorable Robert P. Patterson
June 30, 2008
Page 4

observing defendant "making furtive movements in an apparent attempt to conceal a 'bulge' in his waist area"); United States v. Ramirez, No. 02 Cr. 1228, 2003 WL 260572, at *6 (S.D.N.Y. Feb. 5, 2003) (upholding Terry stop and frisk because, *inter alia*, the fact that defendants outnumbered the officers rendered the situation "potentially more volatile than a stop of a single individual believed to have purchased drugs"); United States v. Rogers, No. 95 Cr. 1136, 1996 WL 422260, at *5 (S.D.N.Y. July 29, 1996), aff'd, 129 F.3d 76 (2d Cir. 1997) (officer was justified in frisking robbery suspect who "kept turning her left side away from [the officer], and at one point appeared to reach toward that side").

## DISCUSSION

The Government consents to an evidentiary hearing to resolve the sole question of whether the police had reasonable suspicion that criminal activity was afoot when they stopped Doughty. In his declaration, Doughty asserts that he not engaged in any suspicious behavior before the Officers approached him. (Doughty 6-12-08 Decl. at ¶ 1). Doughty also denies that he tried to flee from the police. (Id. at ¶ 5).

The Government respectfully submits that the evidence at the hearing will show that the police had reasonable suspicion to stop Doughty, that Doughty disobeyed a police directive to raise his hands, and that Doughty attempted to flee from the police.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By: _____
Amanda Kramer
Assistant United States Attorney
(212) 637-2748

Cc:  Peggy Cross, Esq.